You may proceed. Thank you, Your Honor.  We are asking this Court to reverse the judgment of the District Court below that dismissed Mr. Benjamin's action for a lack of subject matter jurisdiction. We believe upon the de novo review that is accorded to a dismissal for lack of subject matter jurisdiction that this Court should follow the clear text of the United States Code in Section 405H of the relevant Act that precludes jurisdiction only for matters arising under Federal Question Jurisdiction and Federal Officer Jurisdiction and explicitly not for the Bankruptcy Court Jurisdiction under 1334. This Court has already made clear that a textual approach to this provision of law should be followed in its precedent under the Wolcott case, which is a Fifth Circuit case interpreting the mandamus jurisdiction of the Federal Courts under a different statutory provision that is also not excluded under 405H's third sentence. Now, there's been some discussion in the mandamus cases. A whole cottage industry of mandamus cases has come out discussing the peculiar historical history of mandamus, and that's all very interesting and edifying and professorial. But as this Court has said in discussing that mandamus, we don't need to go much further than the text of the third sentence to 405H. Now, my friend will point out, which is true, that different circuits have taken a different approach to 405H's third sentence. So we have a circuit split that I'm disappointed to tell you you will have to confront one way or the other, and my friend will say more of the circuits are on the other side of this circuit split. But I would respectfully draw to the Court's attention that every single one of those circuit court cases does not analyze the, what I call the proviso provision of 2664 in its full context as a savings clause. None of those circuit court cases discuss the savings clause timing element of the proviso. They pluck the words and analyze them in isolation. And so there's been a cascading effect of circuit precedents that have built up, based on my opinion, a misapprehension of the very clear text of the statute and what that interpretive proviso is designed to do. Suppose we agree that the plain text of the third sentence does not bar you. What do we make of the second sentence? Is the second sentence a jurisdiction stripping provision, or is it a channeling exhaustion requirement? The second sentence is an unfriendly element of 405H. The Supreme Court has wrestled with this question, too. And the problem is so the short answer to your question, Judge Oldham, is it is not a jurisdictional provision. It is best perceived as a sort of channeling provision for actions that come under 405 jurisdiction that say you have to satisfy the exhaustion requirements of 405. And when the Supreme Court wrestled with that, you can actually see it in the Salfi case and then the Matthews v. Eldridge case that happened at the same time. And Justice Rehnquist is sort of saying, well, some of this has to be jurisdictional because you've got to — it lists requirements that are a precondition to proceeding under 405. And then in Matthews v. Eldridge, the Court comes out and clearly says not all of this can be jurisdictional. We're going to disaggregate it into the jurisdictional component, which is presentment, and then the — everything else of it, which is exhaustion. And as an exhaustion component, it's subject to all sorts of doctrines of excuse and waiver and forfeiture and excuse by the government. So I understand that as to 405G. What I'm wondering, though, is as to 405H, the first two sentences there, it sure seems like, at least under cases like Califano v. Sanders, that those would be — that those are channeling or, you know, funneling provisions that take some class of claims. And I want to ask you about what that class of claims is. Maybe I can answer that question sort of in the negative, which is to say one way one could read — incorrectly — one way one could read the second sentence is by forcing everything into the 405G procedures as a channeling provision as you use it. The problem with that — and that was the opinion, by the way, adopted in a concurrence by Justice Stewart in Califano. It picked up his vote, and I believe it was Chief Justice Berger's. I'll have to go back and look. And the reason that's never been adopted by a majority of the Court and, indeed, is elaborate, I think, in quite some scholarly depth by Judge Friendly in the position of the Ellis opinion that's cited in our briefs, is because if you read channeling as exclusive, then what you've done is equated it with a jurisdictional provision. And if you read it as de facto jurisdictional, by requiring everything to go through the 405G hoops, then you've created yourself a new textual problem, which is you've rendered the third sentence surplusage or redundant, which is a jurisdiction. It would be completely unnecessary to have the third sentence with the second sentence doing that work. Which I completely understand, but that would assume that the stuff that is being channeled and the stuff that's being stripped are the same. And so I'm actually wondering if this helps your case, and so I'm curious as to how this works. I think — If I just — let me finish this sentence. So if it is true that the findings and decision of the Commissioner of Social Security after hearing, if that is the thing that is being channeled in the first two sentences, that is a different thing than no action against the United States, et cetera, et cetera, et cetera, the third sentence. Yes. And it strikes me that there is a textual similarity between the findings and decision of the Commissioner of Social Security after hearing — that's the first sentence coupled with the second — Yes. — and the kind of stuff that is a application for benefits in B1 of the same section. It would be a B1 hearing-type action that would then go into 405G for the judicial review procedures after the administered procedures. But your client isn't applying for a claim — is not applying for benefits, and therefore I don't see why this is all sort of neither here nor there. I think this is a plausible reading. I would have to think some more, Your Honor, about whether that could make sense of the second sentence. I will say that the Supreme Court's most recent pronouncement of it in Illinois counsel, it tried to say that it is clearly trying to channel a lot of things over and impose some sorts of exhaustion requirements, and in that channeling capacity puts forward the — we could call it the strict exhaustion requirements to get all the 405 matters through the 405G hoops. But the corollary of that is no court has ever held that when jurisdiction sits in a non-405 capacity, such as 1334, that you would transplant the 405G non-jurisdictional exhaustion requirements and say, well, you still have to go through those 405G things by command of the second sentence of 405H, even though you're not proceeding herein under 405G. We're going to take those exhaustion requirements and put them into 1334 jurisdiction. And I suppose the textual basis, too, as well, would be that review under 1334 is not review as herein provided, and herein provided would be the 405G, and yet we clearly have the alternate basis of the jurisdiction under 1334 in Mandamus and et cetera. It is a messy issue, which I will concede the second sentence is application. And I'm not — I mean, I understand that it's messy, but I'm not sure how much of it we necessarily have to get into. If the 1334 jurisdiction is here, I think we don't need to wrestle with the conundrum of the second sentence of 405H. Well, unless it's a jurisdiction strip. Unless it's jurisdiction strip, which the Supreme Court has expressly said it is not jurisdiction stripping. In the context of saying that it's not, isn't the entire premise of Califano in cases like it that the thing that your client is asking for is a procedural benefit, right? That is like, hey, you should not be withholding my benefits while I've got this hearing thing applying. It is — so it is therefore not the sort of stuff that is meant to be either channeled or stripped. It is — there are — there is uncertain case law on the scope, what we'll call the scope question of whether this is a 405-type issue or if it's purely collateral and say, hey, I'm just asking for a procedural thing that's not really covered by the spirit of it. There is some very capacious language in Supreme Court precedent that suggests it should be broad. But I think I can answer that question in perhaps a more satisfying way to Your Regardless of his — we'll call them procedural defect claims with the Social Security — he has straight-up garden-variety statutory bankruptcy causes of action that are listed under Title 11 of the USC that have nothing whatsoever to do with the intricate apparatus of the Social Security Administration. He says you violated the set-off provisions of the Bankruptcy Code. It doesn't matter if that's asserted against the federal government, a private creditor, the Social Security Administration, anyone in the seat. He said you can't do that because you're bettering yourself against all the other bankruptcy estate. And that cause of action arises under 553 of the Bankruptcy Code, which is expressly why Congress in Section 106A of the Bankruptcy Code explicitly, the clearest statement imaginable, abrogates sovereign immunity for these cause of actions that come under the Bankruptcy Code, not separate, you know, tort contract things where you're trying to expand possibly the scope of liability by hooking yourself in a bankruptcy court. These are bankruptcy causes of action. And that's why we would have a clear basis of jurisdiction. We shouldn't fight the text. And we have an abrogation explicitly under 106A of sovereign immunity, so we shouldn't even worry about what any exhaustion requirements might or might not be by command of 405H's second sentence, which is a conundrum for me because I prefer the comfort of the clear sentence of 106A, which tells me right now sovereign immunity is waived. And there can be no exhaustion when sovereign immunity is waived, which is why every court that has looked at this and says there is no exhaustion requirement of bankruptcy. It doesn't matter if you're under Social Security action. It doesn't matter if you're in the Fifth Circuit under the IRS proceedings, under the West Texas manufacturing case, discussed at some length in the learned dissent of the Supreme Beef case. They say there's no exhaustion because that's not jurisdictional. That's just the Bankruptcy Code waiving it for a complicated thing under the IRS, under the Federal Tort Statement Act, et cetera, et cetera. You should be charried to create a circuit split and impose exhaustion requirements, if I may, Your Honor. Okay. So what are you really looking for? What am I looking for is a report. If you win, you don't have to pay the $6,000 back, and you get the $536, because it doesn't seem like something that would drive the extent of attorney's fees and time and effort involved in this case. Are you just looking for a clarification of the exhaustion issue or the conundrum you like to identify? Well, if Your Honor is asking if my motivation is for taking on a case pro bono publico, it's because I believe that the jurisprudence has misinterpreted and I'm trying to correct what I perceive as a massive error of Federal court jurisdiction. I'm only representing Mr. Benjamin on this appeal. He's going to have to fight out his matter on remand of what happens with his particular claims against the Social Security Administration. So you're not his lawyer otherwise? I'm his appellate counsel. I think — I mean, I will say this. I don't want to assume a duty of representation or anything for Mr. Benjamin, because I don't know. His complaint is pro se. I think it should be interpreted generously when he has a chance to actually get to the merits. He has lots of claims he's made. But I can tell you this. I can seize quite comfortably onto the 553 matter and say that's straight-up bankruptcy law. There's clearly subject matter jurisdiction. There's no exhaustion requirement. That should be remanded. Whatever itself he has to do on remand, that's going to be his business on remand. Is that responsive to Your Honor's question? Sort of. I could — I would now enter into the realm of speculation and speculate what Mr. Benjamin wants, but I'm worried that would be unwise, and I think it's more circumspect for me just to stick within the role of this appellate matter on the matters on which we're appealing. How did he find you? That's an excellent question. I have — I pursue certain matters of pro bono interest, and I do some litigation in the appellate courts when I think there have been errors, when I don't have to report to a paid client. It's one of the nice things of tenure. I suppose I have a lifetime appointment without any constitutional protection, merely contractual protection. And so I think the answer is correct, and so I'm intervening here pro bono because I think that the other courts have it wrong, and Mr. Benjamin doesn't have counsel, and I'm happy to provide it at my expense for this issue. If you want, I have three more minutes of time. I don't want to waste time. I've tried to be as explicit in the briefs as possible, explaining the basis of my arguments on the statutory jurisdiction. I just would like to sound a note in policy, if I may, which is there might be a concern that if you follow the text, as I strongly urge you to do, you might be people trying to sneak around the bar of Social Security. I can point to the empirical point that there is not a floodgate of litigation of Social Security claims as far as we can tell in the Ninth Circuit, where the Ninth Circuit has followed the clear text. You don't see bankruptcy conferences, people talking about, oh, go to the Ninth Circuit because you can get all your Social Security claims first. And indeed, Mr. Benjamin's case does not suggest any gamesmanship or running to bankruptcy to circumvent the Social Security. He was driven into bankruptcy when his checks got cut by Social Security and ended up losing his home in the bankruptcy, which is not an infrequent occurrence in the bankruptcy case. So any issues of gamesmanship or strategy do not appear to be present here. And, of course, bankruptcy judges are amply situated with the capacity to deal with bad faith proceedings, to dismiss them, to stay them, even if a complicated matter were to ever come up. Let's say there's a conjoined case where he's bringing a bankruptcy claim and then something really complex involving the Social Security Administration's operation and procedures. The bankruptcy judge can say, I'm not going to hear that one, I'm going to stay that one and send you over to Social Security to work it out. Come back and report to the trustee with all your stuff later on. I'd like to reserve the remainder of my time for rebuttal, if I may. Thank you, counsel. Thank you. You may proceed. Good afternoon. Abby Wright on behalf of the United States. I'd like to start, I think, addressing sort of the practical realities of this case for Mr. Benjamin. The only way that Mr. Benjamin can recover the money he seeks is to get a waiver of the overpayment amounts he has paid. And he started that administrative process that is in the midst of ongoing now. And instead, he went to the bankruptcy court to try to have the bankruptcy court hear it, and that's incorrect for two reasons. I'd like to begin with the exhaustion point, which is that the second sentence of 405H requires exhaustion, regardless of whether the bankruptcy court had jurisdiction under the third sentence. The 405G and 405H set up a very carefully constructed scheme for the past 80 years where claimants seeking benefits or seeking a waiver of their overpayment amounts. Can I pause you right there? I don't mean to interrupt, but that last little piece, or waiver of the overpayment amounts, is in the Social Security Administration regulations. I looked at them, and you guys provided, the United States provided a very helpful description of it. SSA's decision that an individual is overpaid in initial determination subject to the SSA's four-level process for administrative review, which ends in 405H and then 405G. That's right. All by regulation. None of the word, that little piece that I just, and I apologize again for interrupting, isn't in the statute. The statute talks about people who are applying for claims for benefits. This is what I was asking your friend on the other side. It doesn't say anything about overpayment determinations. It talks about hearings, too, which, of course, Mr. Benjamin never got. What I'm wondering is, since he's not seeking a 405B1 claim for benefits, why do we even get into this channeling provisions in 405H, the adjudication provisions in 405G? Obviously, that's not an argument that Mr. Benjamin has made, so I'll be honest and say I hadn't thought about that before. Given that the agency provides a process by regulation that is very similar, except for the very beginning, almost identical to that for when you apply for benefits, I think the agency is treating that as akin to a request that you, it'd be waived, that you received payments for a period of time when you weren't actually entitled to benefits. I think the agency views it as, we're deciding whether you should be able to keep those benefits that you received, even though you didn't meet the substantive requirements under the Act. I'm not aware of any case or any plaintiff, in fact, who has made that argument in the waiver context. I think everyone has proceeded as if it goes under 405G. I think there's, the language of 405G, I mean, you get a final decision of the Commission of Social Security under the waiver as well. Yeah, and you agree, and obviously if the Social Security Administration hadn't taken years and years and years and having left this in an inbox somewhere, Mr. Benjamin would have gotten the four-level review procedure that ends in G. He would, yes. Right. And so the only reason that this is even coming up, and this may explain why it doesn't happen very often, is for whatever reason, for reasons that are not in the record, this sat in an inbox somewhere in the United States government, and he never got it. And because he never got it, and because of the $6,500 or however many dollars it is of withholding that he says is unlawful and you dispute, he was driven into bankruptcy and has to do it. Like, it's not like he doesn't have a choice under Section 553. He has to put this in. And so now we're confronted with the situation of trying to figure out how to do something that maybe, maybe no one has ever tried to think about before. Well, just a couple of, it is not in the record, Your Honor, but the agency did stay the administrative proceedings once he went to bankruptcy court. So just to give you some comfort that there is not a backlog in the Social Security Administration in the way I know you may be aware of. Does it normally take multiple? I mean, he sent in, we all agree, right, that he sent in his, whatever it was, waiver request almost immediately upon the overdetermination, the overpayment determination. So what happened in this case was he was the representative payee for his sister, so she sent in a waiver request at that time. She died in the interim. He then, we have a letter from SSA in the record, of course, that drives home why this isn't really easy to do. We don't have an administrative record. There's a record from SSA saying we are responding to your recent request. That's July of 2016. So he then does, he has sought a waiver. They stop collecting payments at that point up until that is the, they make the first level determination to deny that. And then they do and then he files for bankruptcy. So just to get the, just wanted to make sure that order was clear on that. Right. But if the court agrees that you cannot read the numbers 1331 and 1346 to mean 1334, would the appropriate disposition would be simply to reverse, send back, and have all this flushed out in remand, either in, presumably in the bankruptcy court, right? No, I think, I mean, we still have our alternative argument that exhaustion would still be required and he hasn't made any sure. Under 1334. Under 405G and the second sentence of 405H, that would still be required even if the bankruptcy court had jurisdiction. And he has nowhere here, I think that's why this court can dispose of it because he's nowhere argued that there should be a waiver of the exhaustion requirements. Indeed, in his reply brief, he seems to concede that there is no basis for that. I mean, it's an exhaustion requirement with teeth. If you look at Ringer, for example, it's not just it was futile or that, you know, in that case, there was a man who needed a surgery, for example, and the Supreme Court had to exhaust. So, it is an exhaustion requirement that should have meaning. He has a Social Security claim. That claim is defined by federal law, it's entitlement, that it only exists because of the federal law and the federal law comes with, you get the benefit of the entitlement, it comes with the package deal of the channeling of those claims through the Social Security Act. So, even if this court were to disagree with us on that third sentence, it would go back to the bankruptcy court. I think you can dispose of it if you agree that there's never been a showing of why we should wait, but even if you want some, you know, want to have someone else do that in the first instance, that's what would be decided. How is he supposed to exhaust the — I'm not sure I understand the exhaustion requirement as applied to the bankruptcy claim, right? Because the reason he's in bankruptcy is because he couldn't exhaust this, right? If he'd been able to exhaust it, or if the Social Security Administration had followed its own regulations and stayed the overpayment withdrawals of his benefits while this was all going on, he wouldn't be in the bankruptcy court, or at least that's his contention. That's his contention. I mean, a couple of responses. The first one I want to — was a point I wanted to get to, was that he expressly abandoned an argument under 553 in the bankruptcy court. In bankruptcy court, the government moved to dismiss both under 12b-1 and 12b-6. On the merits of the 12b-6 claim, we said, out of an abundance of caution, we're addressing the fact that we think he might be making this claim that we shouldn't have set off with 90 days preceding the petition. We defended that on the merits. His reply brief, you know, you can look at it in the bankruptcy docket. It says expressly, ignore that portion of the government's brief. I'm not making that argument. So I think even for a pro se plaintiff, that's an affirmative abandonment of that argument. So I think this court doesn't have to grapple with that. He would have — you know, he'd have an argument to make there that it arises under the bankruptcy court and not under the bankruptcy code and not under the Social Security Act. And so that, I think, would be a different question, but it's not before you today. So I'll turn to the third sentence of 405H as well. Three circuits — sorry, four circuits have adopted the same view that we advance here, which is that the Technical Corrections Act in 1984 did not intend and did not change what had been the longstanding jurisdictional allocation channeling solely through the Social Security Act and into district court. In 1939, when the Social Security Act was enacted, it referred to Title 24 — or, sorry, that was all recodified in 1948 into Title 28. For some 30 years, the State of Affairs persisted, wherein it just referred to the wrong section. The Supreme Court in Weinberger brackets in the correct provisions that alerted Office of Legal — Law Revision to the problem. Unfortunately, they did not correct the problem. They selected two provisions of the — at least four provisions, possibly five, that would have been applicable. And so what we have now, if you accept plaintiff's position, is a scenario in which you could proceed, for example, in diversity jurisdiction. So imagine you're a Medicare, an entity receiving Medicare payments, you're diverse from your Medicare contractor. Under plaintiff's theory, you can proceed in district court. If you happen to not be diverse, you cannot, because you can't go under federal question jurisdiction. So every court to consider the diversity jurisdiction context has said no, has looked at the — and I think it's unfair to say they haven't looked at the history. I mean, In re Bayou Shores really goes through the historical analysis, looks at the technical corrections statute, looks at the other things that were being done in that. Can we get to the recodification canon if we think the text is clear? Because I see the numbers 1331 and 1346. I don't see the number 1334, which begs the question, why do you get into history, recodification canon, any of the rest of this? Well, Your Honor, I think you can look at Supreme Court cases like the Anken — Ankenbrand case where the language was, I think, clear that it's in all civil cases. And the Supreme Court went through a very lengthy analysis of saying, we've always had this domestic relations exception. What does it mean? What's the scope of that? They narrowed — you know, it was a pretty narrow scope, but they still said there are some civil cases that won't be heard. And so, you know, looking to that Supreme Court approach, I think you can do that here. I think the Supreme Court has also looked — and the Tidewater case looks at the practical realities. What's the upshot of the — interpreting the statute the other way? Here, as I've explained, there are several, I think, vectors along which the practical reality is problematic. One is the diversity jurisdiction context-wise. By chance, if you are in a different state from your Medicare contractor, you could proceed. We have third, seventh, and eighth circuit cases rejecting that approach. We also have the problem that under plaintiff's theory — this is a case, I think, where it's easy to say, well, it's a waiver. I can look at the regulations. It's a pretty easy thing for a court to determine. But their position applies even to substantive disability determinations. They don't think waiver is required. They don't think — I don't see why resentment would be required. I don't see why there would be limitations, periods. You could imagine someone showing up in bankruptcy court saying, I was disabled 20 years ago. I should have been receiving benefits this whole time. Under the Social Security Act, the Social Security Administration is charged with helping the claimant, as this court is well aware, helping the claimant develop the record. It's a non-adversarial proceeding, so I think plaintiffs would, I guess, have the bankruptcy court conduct a sort of mini-trial wherein Social Security comes in, and they're developing the record, and they're helping the claimant, and then maybe they become adverse from the claimant at some point. It's just — it's not what Congress envisioned. It's not what Congress constructed and designed should happen here. There are no further questions. We'll rest on our brief. We ask that you affirm. Thank you. All right. Thank you. Thank you. Rebuttal. Thank you, Your Honors. I have a few points I'd like to do in rebuttal. Specifically to talk about exhaustion, as I said, 106A is the basis of our exhaustion requirement, not the second sentence or third sentences. I have reflected on Judge Oldham's theory about whether this is even apposite of the second sentence, and there is, I do believe, a plausible argument that this would be neither a finding of fact nor a commission which we don't get into in the first place. I cannot give you authority supporting that position. I'm not even sure I have explicit authority rejecting that position. I do want to say, though, in response to your question of whether we get into the recodification doctrine, because that's where my friend went to with the principle part of her argument, is I want to correct one thing she said. If I said this, I misspoke. I did not want to say the other cases don't look at the history. I think the other cases look at the history in comprehensive detail, particularly the Byers-Schwartz case of the Eleventh Circuit. I think the other cases don't look at the text of the effective date proviso and read the words in the context of it being an effective date clause. That's what I'm making the claim no other cases have done. Do we get to the recodification doctrine? Not in this case, for at least two reasons. This is not a recodification. If this case had arisen in 1976, I would be taking a very different position about what the Office of Law Revision Counsel can do on its own without anything else, okay? Or if the statute had anachronistically referred to titles that didn't exist anymore because they recodified it. But this is a 1984 amendment by Congress that does a whole bunch of different things to various parts of the laws, and that's good, old-fashioned positive law done so with the warning of the Office of Law Revision Counsel that they're changing the numbers in the statute. Maybe Congress was foolhardy to have gone ahead and enacted that suggestion. Maybe Congress was wise and wanted to focus the action on the basis in which these types of challenges could be brought up. Federal question jurisdiction, federal officer jurisdiction are the most obvious basis for suing the Social Security Administration. Whatever the reason, inadvertent, intelligent, wise, hurried, we oughtn't second-guess that and stick with what the text of it is. So the recodification, all these wonderful cases cited in the brief and by the shores, they're all about the 1948 recodification of the Judicial Code. We're not dealing with that here. Secondly, to answer your question, I don't think a canon of interpretation can trump clear text. So if you had a statute that talked about a voting age of 18, then you recodify it and you change some language and say the age of majority, I think a textualist might say, ooh, age of majority different from 18, what sort of change should we infer? The recodification doctrine says don't look for a change, they're just recodifying, assume age of majority, 18 is the same thing, okay? Even if it was a recodification like the 1948 Judicial Code, which this is not, even if it was and 18 had become 19, I don't think the recodification doctrine gets you to read 19 as 18. That would maybe be the Scrivener's Error doctrine, but no one's pleading that here. That has nothing to do with anything. A factual correction, Mr. Benjamin did appeal, he asked for a waiver hearing as well, not just his sisters. I do think that the diversity cases and the discussions of, I resist application, but if you want me to arguendo, accept the applicability of the recodification doctrine, I would say even courts that apply it to true recodifications are talking about plausibly ambiguous text or text that maybe expands the definition of a statute where in Akenbrank it went from actions in law and equity to any civil action, right? So the question is, when you expand the text, do you still mean to subsume a longstanding common law exception? Here we have a narrowing of the text that has explicit numbers, and I think it's awfully difficult to use an interpretive presumption to read numbers that simply aren't in there. All the issues of what he waived in his pro se pleadings, and did he waive a discussion of futility or an excuse, did he make a good excuse or not? What this court said, wisely, in the ultra petroleum case, is that you are not a court of first instance, and even on matters of statutory interpretation, which could be matters of de novo legal review, you still should let the court of first instance have the crack at how to interpret all these doctrines, whether they've been waived, forfeited, or whatever. But I do believe that there are, I mean, if I were to get into it, I do think he has plausible arguments. I'm not sure. I'll help him on remand, but he has plausible arguments. Your job today, I submit respectfully, is was the district court mistaken when it said there's no subject matter jurisdiction over this argument? I don't want to get into hypothetical jurisdiction that you might be able to read. Well, maybe if there was hypothetically jurisdiction, we might have affirmed for a failure to exhaust and plead. I think it's just cleaner to reverse remand, let the proceedings depart. We certainly would not say anything goes. I wanted to correct that apprehension. We absolutely concede that presentment is jurisdictional, as authoritatively interpreted by the Supreme Court. Can't get around that, even with 106A of the Bankruptcy Court. He has presented. He's more than presented, as you point out, because it's taken him so long to adjudicate his lost claim. He's been presenting over and over and over at each stage of review. So he's done presentment on steroids, and we would not fight that as a requirement for his appeal. We think it's amply clear that he has satisfied it. We ask for the reversal and wish Mr. Benjamin good luck in his proceedings below when he gets to have his day in court. Thank you, Your Honors. All right.